FILED

2021 SEP 13 AM 10: 27

BARBARA A. WIEDENBEIN
CLERK OF COMMON PLEAS
CLERMONT COUNTY, OH

**COURT OF COMMON PLEAS**
**CLERMONT COUNTY, OHIO**

| | |
|---|---|
| **TOTAL QUALITY LOGISTICS, LLC**<br>4289 Ivy Pointe Blvd.<br>Cincinnati, Ohio 45245 | **Case No.:**<br>2021 CVH 00877 JUDGE MCBRIDE<br>**Judge:** JUDGE McBRIDE |
| Plaintiff, | |
| v. | **VERIFIED COMPLAINT FOR**<br>**INJUNCTIVE RELIEF AND DAMAGES** |
| **JOSHUA JAMES**<br>7512 Lantern Park Ave.<br>Apollo Beach, Florida 33572 | |
| and | |
| **BRANDY KENNAMORE**<br>13434 Tyringham St.<br>Spring Hill, Florida 34609 | |
| and | |
| **EBENEZER COLLADO**<br>1904 W. Jean St.<br>Tampa, Florida 33604 | |
| and | |
| **ABOUND LOGISTICS, LLC**<br>1001 S. MacDill Ave, Ste. 600<br>Tampa, FL 33629 | |
| and | |
| **CYBER TRANZ LOGISTICS LLC**<br>4701 North Federal Highway<br>Pompano Beach, Florida 33064 | |
| Defendants. | |

1

For its Complaint against Defendants Joshua James ("Mr. James"), Brandy Kennamore ("Ms. Kennamore"), Ebenezer Collado ("Mr. Collado" and together with Mr. James and Ms. Kennamore, the "Individual Defendants"), Abound Logistics, LLC ("Abound Logistics") and Cyber Tranz Logistics, LLC ("Cyber Tranz" and together with Mr. James, Ms. Kennamore, Mr. Collado, and Abound Logistics, "Defendants"), Plaintiff Total Quality Logistics ("TQL") states as follows:

## NATURE OF THE ACTION

This action arises from flagrant breach of straightforward and unequivocal restrictive covenants. Although Mr. James and Ms. Kennamore promised that they would not compete with, service, or solicit TQL customers for one year following their departure from TQL, they did just that, for their personal benefit and for the benefit of their new employers, Abound Logistics and Cyber Tranz. And they are doing so with the assistance of Mr. Collado, who has full knowledge of the non-competition agreements that TQL has with its employees. These actions are causing TQL immediate and irreparable injury, requiring injunctive relief.

## PARTIES AND JURISDICTION

1.      TQL is an Ohio limited liability company with its principal place of business at 4289 Ivy Pointe Blvd., Cincinnati, Ohio 45245, in Clermont County, Ohio. TQL provides freight brokerage and third-party logistics services to customers throughout the United States.

2.      Mr. James appears to reside in Apollo Beach, Florida; he worked for TQL from December 3, 2018 to July 6, 2020.

3.      Ms. Kennamore appears to reside in Spring Hill, Florida; she worked for TQL from October 9, 2017 to September 30, 2020.

2

4.    Mr. Collado appears to reside in Tampa, Florida; he is listed as the "AMBR" of Cyber Tranz. Mr. Collado also owns and operates Abound Logistics, LLC. TQL obtained a judgment from this Court against Abound Logistics on June 11, 2021 for tortiously interfering with a non-competition agreement TQL had with one of its former employees, Christian De La Rosa.

5.    Abound Logistics is a Florida limited liability company located in Tampa that provides domestic and international freight and transportation brokerage services. TQL sued Abound Logistics in this Court after TQL discovered that Mr. Collado and one of TQL's former employees who was still subject to his non-competition obligations started the company. *See Total Quality Logistics, Inc. v. Abound Logistics, LLC, et al.*, Case No. 2020 CVH 00835.

6.    Cyber Tranz is a Florida limited liability company located in Tampa that provides, according to its website, "freight brokerage services for small to large manufacturers and distribution companies nationwide." Cyber Tranz registered to do business with the State of Florida on February 20, 2021. According to the Florida Secretary of State's website, Harvey Scholl, Esq. is listed as Cyber Tranz's registered agent. Just days after Cyber Tranz registered, Mr. Scholl informed Abound Logistics' Ohio attorney that Mr. Scholl would be "taking over representation of Abound Logistics" in *Total Quality Logistics, Inc. v. Abound Logistics, LLC, et al.*, Case No. 2020 CVH 00835. Mr. Scholl never made an appearance in that case.

7.    This Court has jurisdiction over the Defendants. Defendants not only aimed harm directly at TQL, which is headquartered in Ohio, but Mr. James and Ms. Kennamore also consented to this Court's jurisdiction. *See infra* ¶ 27. Moreover, although Mr. James and Ms. Kennamore worked out of TQL's Tampa location, they had recurrent contact with other TQL employees located in Ohio during their tenure at the company. Indeed, they had multiple contacts

with Ohio motor carriers; arranged loads from and into Ohio locations; participated in video training sessions put on by TQL employees located in Ohio; utilized an Ohio phone number; and their paychecks were issued from TQL in Ohio, among other contacts. It is also believed that Cyber Tranz has arranged loads from and into Ohio locations and with Ohio companies.

8.      Venue is proper in Clermont County.

## FACTUAL BACKGROUND

A.      **TQL**

9.      TQL is one of the largest third-party logistics companies in the U.S. TQL provides freight brokerage services, third-party logistics services, truck brokerage services, and assistance with supply-chain management throughout the U.S. TQL has operated as a federally authorized freight broker since 1997.

10.     TQL's customers are companies that ship goods from one location to another. Included among these customers are companies that want to ship their own goods, and other freight brokers who already agreed to ship goods on behalf of another customer, but need assistance finding a carrier to fulfill the shipment.

11.     The freight brokerage industry is highly competitive, so TQL has dedicated significant resources to developing its Customer and Motor Carrier lists; other information about TQL's Customers and Motor Carriers; its Load Management System; pricing, selling, training, and marketing strategies; and other Confidential Information such as financial and operating controls and procedures and purchasing information in order to give itself a competitive advantage. This information has significant economic value, is not common knowledge throughout the industry, and is critical to TQL's success.

4

12. TQL takes a variety of steps to safeguard this invaluable information, including requiring employees to sign non-disclosure agreements; password protecting sensitive information; and not publicly disclosing this information.

**B.      Mr. James's and Ms. Kennamore's Employment with TQL**

13. TQL hired Mr. James on December 3, 2018 as a Logistics Account Executive ("LAE") Trainee. TQL eventually promoted Mr. James to Logistics Account Executive. LAEs are responsible for developing customers and selling to existing TQL customers, from which they obtain freight orders and arrange transportation of the freight.

14. Prior to his employment, Mr. James signed a comprehensive Confidentiality and Restrictive Covenant Agreement (the "James Non-Compete"). A copy of the James Non-Compete is attached here as **Exhibit A**.

15. TQL hired Ms. Kennamore on October 9, 2017 as a Logistics Account Executive ("LAE") Trainee. TQL eventually promoted Ms. Kennamore to Logistics Account Executive, Saturday Group Leader, Sales Team Leader, and Senior Logistics Account Executive.

16. Prior to her employment, Ms. Kennamore signed an Employee Non-Compete, Confidentiality and Non-Solicitation Agreement (the "Kennamore Non-Compete" and together with the James Non-Compete, the "Non-Competes"). A copy of the Kennamore Non-Compete is attached here as **Exhibit B**.

17. The Non-Competes recognize that TQL has developed proprietary, confidential, and trade secret information at great expense that is invaluable to the company and unique within the industry and that its disclosure would cause TQL great harm.

18. Mr. James acknowledged that:

- TQL has implemented practices and measures as are reasonably necessary to preserve and to protect the confidentiality of such Confidential Information;

- He has access to Confidential Information;

- He has been instructed about, and knows and understands the value and importance of such Confidential Information;

- He owes TQL a fiduciary duty to preserve and protect Confidential Information from all unauthorized disclosure or unauthorized use;

- Such Confidential Information constitutes "trade secrets";

- Unauthorized disclosure or unauthorized use of such Confidential Information would irreparably injure TQL; and

- All Confidential Information is to be preserved and protected, is not to be disclosed or made available, directly or indirectly, to third persons for purposes unrelated to the business objectives of TQL without prior written authorization of an executive officer of TQL, and is not to be used, directly or indirectly, for purposes unrelated to the business objectives of TQL without prior written authorization of an executive officer of TQL.

Ex. A, §§ 4-5.

The James Non-Compete also makes clear that the obligation to safeguard TQL's Confidential Information continues after his departure from TQL.

> Employee's obligations under this Agreement, specifically including the obligations to preserve and protect and not to disclose (or make available) to third parties consistent with applicable law, continue indefinitely and do not, under any circumstances or for any reason ... cease upon termination of employment; ... Employee agrees to inform all prospective or future employers of the Employee's obligations under the provisions of this Agreement.

Ex. A, § 6.

19.     The Kennamore Non-Compete contains similar acknowledgements to those in the James Non-Compete. Ex. B, §§ 4-6.

20. Because LAEs such as Mr. James and Ms. Kennamore have access to highly confidential and sensitive information and trade secrets in connection with their positions, the Non-Competes contain a number of important provisions designed to protect TQL from unfair competition from former employees after they leave TQL.

21. In particular, in recognition of the obvious harm that would befall TQL if its former employees were to leave and join or form a competing business, Mr. James and Ms. Kennamore agreed that they would, for one year following the termination or cessation of their employment for any reason, not, directly or indirectly, enter into, participate in, consult with, or engage in, any business in competition with the business of TQL, or with any competing business. Exs. A and B, § 9.

22. Indeed, Mr. James and Ms. Kennamore concede that any form of employment relationship with a competing business would necessarily result in them revealing, basing judgments and decisions upon, or otherwise using TQL's confidential information to unfairly compete with TQL. Ex. A, § 5; Ex. B § 7.

23. The Non-Competes also expressly bar Mr. James and Ms. Kennamore from doing business with TQL customers for one year after their departure. Exs. A and B, § 9.

24. Ms. Kennamore was further prohibited from employing, recruiting, soliciting, or assisting others in employing, recruiting or soliciting any person employed by TQL in the prior twelve months. Ex. B § 9(b)(v).

25. Mr. James and Ms. Kennamore also acknowledge in the Non-Competes that a breach entitles TQL to injunctive relief. Ex. A, § 11; Ex. B § 9(e).

26. Although some of the restrictions are only in effect for a period of one year, the Non-Competes expressly toll the one-year period during any time period during which the employee violates any provision of the Non-Competes. Ex. A, § 9; Ex. B, § 9(b)(vi).

27. The Non-Competes contain other important promises, including but not limited to, consent to jurisdiction in Ohio for any suit arising out of the Non-Compete. *See* Ex. A, § 16; Ex. B, § 10.

28. After Mr. James and Ms. Kennamore started their employment at TQL, they received months of extensive and ongoing training on TQL's strategies and methods to succeed within the industry, including, without limitation, training on TQL's services, customers, pricing structure, sales strategies, and general operations. Upon information and belief, neither Mr. James nor Ms. Kennamore had prior experience in freight brokerage or the third-party logistics industry before joining TQL. However, through TQL's training program, they would have acquired detailed knowledge of its unique operations, including, without limitation, shipping services, third-party logistics services, freight brokerage services, truck brokerage services, and supply-chain management services.

29. In addition, as a necessary part of their employment, Mr. James and Ms. Kennamore were routinely given access to TQL's proprietary software that is unique in the industry and to sensitive information such as TQL's customer contact information and list.

**C.     Mr. James and Ms. Kennamore Cease Working for TQL and Join Abound Logistics and then Cyber Tranz.**

30. In May 2020, Mr. Collado and a former TQL employee, Cristian De La Rosa, formed Abound Logistics in order to compete with TQL.

31. Mr. James's employment at TQL ended on July 6, 2020. All of the covenants in his non-compete remained in full effect at the time of his departure.

8

32.     Ms. Kennamore's employment at TQL ended on September 30, 2020. All of the covenants in her non-compete remained in full effect at the time of her departure.

33.     Soon after their departure from TQL, Mr. James and Ms. Kennamore, upon information and belief, began working for Abound Logistics in violation of the Non-Competes.

34.     According to its Articles of Incorporation, Abound Logistics was formed to provide exactly the type of services offered by TQL, specifically, "domestic and international freight and transportation brokerage services." Abound Logistics had freight brokerage authority from May 22, 2020 through December 21, 2020.

35.     Abound Logistics was a direct competitor of TQL.

36.     When TQL discovered that unlawful conduct, it sued Mr. De La Rosa and Abound Logistics in this Court.

37.     In that lawsuit, both Mr. De La Rosa and Abound Logistics were represented by Ohio counsel.

38.     However, in February 2021—just days after Cyber Tranz was registered to do business with the State of Florida—Abound Logistics' Ohio counsel was informed that the company was now represented by Harvey Scholl. *See* February 23, 2021 Letter attached as **Exhibit C**.

39.     As a result, Abound Logistics' Ohio counsel withdrew its representation.

40.     Mr. Scholl, who also serves as Cyber Tranz's Registered Agent, never made an appearance in the lawsuit.

41.     Around this same time—namely February 2021—Mr. James and Ms. Kennamore switched from Abound Logistics to Cyber Tranz.

42.     According to its website, Cyber Tranz provides the same type of services offered by TQL, specifically, domestic and international freight and transportation brokerage services. Cyber Tranz obtained its freight brokerage authority on March 5, 2021.

43.     Cyber Tranz is a direct competitor of TQL.

44.     Therefore, it is not surprising that Mr. James and Ms. Kennamore used fake names at Cyber Tranz—James Richardson and Cassie James, respectively—in an effort to hide their unlawful conduct from TQL.

45.     TQL recently received a tip that Mr. James and Ms. Kennamore worked for Abound Logistics and then, once Cyber Tranz was formed, switched to that company. TQL also learned that Mr. James, Ms. Kennamore, Abound Logistics, and Cyber Tranz have all done business with several TQL customers.

46.     As a result, Mr. James and Ms. Kennamore have plainly breached the terms of their Non-Competes.

47.     As for Mr. Collado, he knows, by virtue of his involvement in the Abound Logistics' lawsuit, that TQL has non-competition agreements with its employees. But Mr. Collado and Cyber Tranz nonetheless hired Mr. James and Ms. Kennamore in a flagrant disregard of those restrictions.

## FIRST CLAIM FOR RELIEF
### Breach of Contract
### (Against Mr. James and Ms. Kennamore)

48.     TQL incorporates all of the previous paragraphs set forth in this Complaint as if fully set forth herein.

49.     The Non-Competes are valid and binding agreements.

50.    As described more fully above, Mr. James and Ms. Kennamore have breached the Non-Competes by doing business with TQL competitors, Abound Logistics and Cyber Tranz.

51.    As described more fully above, Mr. James and Ms. Kennamore have breached the Non-Competes by soliciting and accepting business from TQL customers and prospective customers.

52.    Ms. Kennamore has breached her Non-Compete by soliciting, employing, recruiting, and/or assisting others in soliciting, employing and recruiting TQL's employees who were employed by TQL fewer than 12 months prior.

53.    As a direct result of those breaches, TQL has suffered and continues to suffer monetary damages and irreparable harm.

54.    Monetary damages alone will not be sufficient to remedy all of the harm caused to TQL by virtue of the breaches of the Non-Competes.

55.    TQL therefore requests a temporary restraining order, preliminary injunction, and permanent injunction commanding Mr. James and Ms. Kennamore to comply fully with their Non-Competes.

56.    TQL further requests recovery of its attorneys' fees and compensatory damages in an amount to be determined at trial.

### SECOND CLAIM FOR RELIEF
### Tortious Interference with Contract
### (Against Abound Logistics, Cyber Tranz, and Mr. Collado)

57.    TQL incorporates all of the previous paragraphs set forth in this Complaint as if fully set forth herein.

58.    The Non-Competes are valid and binding agreements.

59.    Mr. Collado, Abound Logistics, and Cyber Tranz were aware of the Non-Competes.

60.     Despite this knowledge, as described more fully above, Mr. Collado, Abound Logistics, and Cyber Tranz purposefully and intentionally interfered with the Non-Competes, by, among other things, facilitating Mr. James's and Ms. Kennamore's direct competition with TQL and their solicitation of, and acceptance of business from, TQL customers and prospective customers, in flagrant violation of the Non-Competes.

61.     Mr. Collado, Abound Logistics, and Cyber Tranz tortiously, willfully, and maliciously ignored the contractual obligations in the Non-Competes, without any justifiable excuse, and in bad faith.

62.     Mr. Collado, Abound Logistics, and Cyber Tranz acted with purpose and desire to interfere with the performance of the Non-Competes.

63.     Mr. Collado, Abound Logistics, and Cyber Tranz knew that interference was certain or substantially certain to occur as a result of their actions.

64.     As a direct and proximate result, TQL has been damaged in an amount to be determined at trial. Such damage includes, but is not limited to, lost sales revenue, customer relationships, and fair competition.

### THIRD CLAIM FOR RELIEF
### Violation of Ohio Trade Secrets Act
### (Against the Defendants)

65.     TQL incorporates all of the previous paragraphs set forth in this Complaint as if fully set forth herein.

66.     During their employment with TQL, Mr. James and Ms. Kennamore had access to, and did obtain, TQL's confidential, proprietary, and other trade secret information, including but not limited to, TQL's customer and motor carrier lists, its Load Management System, current and

future marketing plans, contract terms with customers, its training program, and other information pertaining to non-public business opportunities.

67.     TQL's customers and motor carrier lists, its Load Management System, along with other confidential information, are compilations of information used in TQL's business. TQL went to great expense to discover, develop, and assemble this trade secret information.

68.     This trade secret information is not generally available to TQL's competitors and gives TQL a competitive advantage over other market participants.

69.     TQL has taken reasonable measures to keep and maintain the trade secret information as confidential, including but not limited to storing this sensitive information on password-protected computers, not publicly disclosing this information, and requiring that employees in contact with such information sign agreements with non-disclosure covenants.

70.     Defendants are aware of the confidential and proprietary nature of TQL's trade secret information and of their duty not to use this information for their benefit.

71.     Defendants are misusing the trade secret information to benefit themselves financially at TQL's expense.

72.     As a direct and proximate result of these acts by Defendants, TQL has suffered and will continue to suffer irreparable harm that cannot be adequately compensated with an award of damages. Accordingly, TQL is entitled to injunctive relief.

### RELIEF REQUESTED

WHEREFORE, TQL respectfully requests judgment in its favor and against Defendants as follows:

a.   Enjoin Mr. James and Ms. Kennamore from violating the Non-Competes;

b. Enjoin Mr. James and Ms. Kennamore from working at Cyber Tranz until such time as the non-competition clauses in the Non-Competes have respectively expired;

c. Enjoin Mr. James and Ms. Kennamore, independently and through Cyber Tranz, from soliciting or accepting business from any TQL customer in violation of the Non-Competes;

d. Enjoin Ms. Kennamore from employing, soliciting, or recruiting, and/or assisting others from employing, soliciting, or recruiting any persons employed by TQL in the prior twelve months;

e. Enjoin Mr. Collado, Abound Logistics, and Cyber Tranz from interfering with the Non-Competes;

f. Enjoin Defendants from misappropriating or threatening to misappropriate TQL's trade secret information;

g. Award damages to TQL for any harm caused by the breaches of the Non-Competes;

h. Award damages to TQL for harm caused by Mr. Collado's, Abound Logistics', and Cyber Tranz's interference with the Non-Competes;

i. Award punitive damages;

j. Award TQL's attorneys' fees, pre-judgment interest, and costs and expenses incurred in connection with this action;

k. For all purposes, award TQL on all counts and claims for all requested relief an amount in excess of $25,000; and

l. Award any and all other relief as this Court sees fit.

Respectfully submitted,

Nicholas J. Pieczonka (0087062)
Medora M. Akers (0096419)
TAFT STETTINIUS & HOLLISTER LLP
425 Walnut Street, Suite 1800
Cincinnati, OH 45202
Phone: (513) 381-2838
Fax: (513) 381-0205
npieczonka@taftlaw.com
makers@taftlaw.com

*Attorneys for Plaintiff*

## VERIFICATION

I, Marc Bostwick, being duly cautioned and sworn, state that I am authorized to act as an agent of the Plaintiff for the purpose of verifying the Complaint herein in accordance with the Ohio Rules of Civil Procedure. To the extent I have personal knowledge of the matters alleged in the Complaint, the information is true and accurate to the best of my knowledge and belief. As to any matters for which I do not have personal knowledge, I am authorized by Plaintiff to state that Plaintiff is informed and believes that the allegations of the Complaint are true and accurate to the best of its knowledge and belief.

Marc Bostwick

# Exhibit A



## TOTAL QUALITY LOGISTICS, LLC

## CONFIDENTIALITY AGREEMENT AND RESTRICTIVE COVENANT

### (Florida)

THIS CONFIDENTIALITY AGREEMENT AND RESTRICTIVE COVENANT ("Agreement"), is made and entered into by and between Total Quality Logistics, LLC ("TQL"), located at 4289 Ivy Pointe Blvd., Cincinnati, Ohio 45245, and the employee whose name is set forth below his or her signature on the last page of this Agreement and whose address is on file with TQL ("Employee"), and the Agreement is entered into on the date set forth below Employee's signature. Performance under this Agreement will begin on the date Employee's employment with TQL actively begins.

### RECITALS:

**WHEREAS**, TQL is an Ohio limited liability company that operates in the State of Florida. TQL is engaged in providing shipping services, third-party logistics services, freight brokerage services, truck brokerage services, and supply-chain management services throughout the Continental United States. References to TQL in this Agreement refer to TQL, its parent and subsidiary companies, all related entities, and its successors and assigns;

**WHEREAS**, TQL is unique within the organizations providing shipping services, third-party logistics services, freight brokerage services, truck brokerage services, and supply-chain management services (the "Industry"). TQL has spent extensive time developing its goodwill and its relationships with Customers, Motor Carriers, suppliers, and others within the Industry. TQL provides extensive training on ways to succeed within the Industry. TQL also provides tools, such as proprietary software, that are unique within the Industry. The relationships, tools, and training developed by TQL will assist Employee in gaining intimate knowledge of TQL's business model, its Customers, Motor Carriers, suppliers, contact information, lanes, pricing, sales strategy, service, and other confidential and proprietary information. The knowledge learned at TQL is unlike what could be learned elsewhere within the Industry. TQL takes steps to protect the confidentiality of this information and it would have value to a TQL competitor. Employee, therefore, acknowledges and agrees that what Employee learns and is trained in at TQL would necessarily cause unfair competition if Employee took employment competitive to TQL;

**WHEREAS**, TQL develops and maintains confidential proprietary information (hereinafter referred to as "Confidential Information"), as further defined in Section 3 of this Agreement;

**WHEREAS**, Employee agrees that any and all such Confidential Information set forth above, whether or not formally designated as such, is vital to the success of TQL's business and Employee understands that all such Confidential Information is the exclusive property of TQL, that it is to be treated and maintained as confidential proprietary information by Employee, and that it is treated and maintained as confidential proprietary information by TQL;

**WHEREAS**, in order to allow TQL to remain effective and competitive in the marketplace in which it conducts its business, and to maintain its business relationships on the basis of trust and confidence, it is essential that all Confidential Information remain protected from

unauthorized disclosure, dissemination, and use, except as authorized and required by TQL to enable Employee to properly perform his or her work in the normal course of TQL's business;

**WHEREAS**, Employee acknowledges that unauthorized use or disclosure of Confidential Information as defined herein would cause, or be likely to cause, substantial and irreparable harm and detriment to TQL and would constitute unreasonable and unfair competition to TQL;

**WHEREAS**, Employee acknowledges that TQL's Customer and Motor Carrier lists, other information about TQL's Customers and Motor Carriers, its Load Management System, and other Confidential Information, are proprietary trade secrets with significant economic value, are compiled through a substantial investment of time and money by TQL, and are not common knowledge throughout the Industry;

**WHEREAS**, in the course and scope of employment by TQL, Employee must be given access to such Confidential Information from time-to-time or continuously, in order to effectively perform his or her job duties;

**WHEREAS**, TQL will not agree to employ or continue to employ Employee, unless Employee signs this Agreement and is bound by it;

**WHEREAS**, TQL has a strong and legitimate business interest in preserving and protecting its investments including, but not limited to, its specialized training, its Confidential Information, its trade secrets, and its goodwill; and

**WHEREAS**, TQL desires to preserve and protect its legitimate business interests and Confidential Information further by prohibiting competitive activities of the Employee during his or her employment with TQL and by preventing unfair and unlawful competitive activities by Employee following termination of his or her employment with TQL.

**NOW THEREFORE**, in consideration of the employment or continued employment by TQL of Employee and other good and valuable consideration the receipt and sufficiency of which is acknowledged by Employee, TQL and the Employee agree:

1.    <u>Recitals</u>.  The "Recitals" set forth above are hereby restated and incorporated herein by reference as though fully set forth herein.

2.    <u>Employment</u>.  Employer employs Employee as an employee at will, and nothing in this Agreement changes Employee's status as an at-will employee.  Either TQL or Employee may terminate Employee's employment for any reason at any time.  Employee agrees to undertake and assume the responsibility for performing for and on behalf of TQL whatever duties shall be assigned to Employee by TQL at any time from time to time.  It is further understood that TQL retains the right to modify Employee's duties at any time and, in its discretion, determine Employee's compensation, including, but not limited to, any salary, other cash compensation, and benefits.

3.    <u>Confidential Information – Defined</u>.  Employee recognizes, acknowledges, and agrees that TQL develops and maintains confidential proprietary information, including but not limited to, its operating policies and procedures; computer databases; computer software; methods of computer software development and utilization; computer source codes; financial records,

FL                                           2

including but not limited to, credit history and information about Customers, potential Customers, Motor Carriers, and suppliers; information about transactions, pricing, the manner and mode of doing business, and the terms of business dealings and relationships with Customers and Motor Carriers; financial and operating controls and procedures; contracts and agreements of all kinds, including those with Customers, Motor Carriers, and vendors; pricing, marketing, and sales lists and strategies; Customer lists and Motor Carrier lists, including contact names, physical and email addresses, telephone numbers, and other information about them; trade secrets; correspondence; accounts; business policies; purchasing information; functions and records; logistics management; and data, processes, and procedures. Confidential Information also includes any information described above which TQL obtains from another company and which TQL treats as proprietary or designates as Confidential Information, whether or not owned or developed by TQL. This information may be in tangible written form, computer databases, or it may be represented and communicated solely by oral expressions or business activities which are not reduced to written form. Confidential Information does not include information that is protected by the National Labor Relations Act ("NLRA"), and nothing in this Agreement shall be interpreted to prohibit employees from engaging in protected activity under the NLRA, including without limitation discussing wages, hours, or terms and conditions of employment. TQL will not prohibit or discipline any of its employees from or for discussing their wages, hours, or other terms and conditions of employment or engaging in any other activity protected by the NLRA. Confidential Information includes all information developed, acquired, and maintained by Employee in the course of Employee's employment with TQL as it may exist from time to time, and whether or not it is maintained on the Employee's personal computer, laptop, or other equipment personally owned by the Employee, and is the property of TQL. Further, Confidential Information may be protected by patents, copyrights, or other means of protection and further includes, without limitation:

(a) All documents describing, and all information and knowledge regarding, procedures or methods employed by TQL in soliciting, procuring, and handling TQL's Customers and business, including working and billing procedures;

(b) All information acquired by TQL relating to prospective and current business transactions and arrangements;

(c) All market analyses and/or demographic market analyses and/or demographic information or studies of the current and/or potential markets of interest to TQL;

(d) All understandings between or among TQL and other persons;

(e) All documents provided to TQL in confidence by third parties;

(f) All legal documents and correspondence concerning TQL;

(g) All opinions, decisions, rulings, and audits of governmental agencies relating to TQL;

(h) All files concerning TQL's Customers and prospective Customers, and the contents of such files; and

(i) All other information specifically designated "Confidential" by TQL.

FL                                    3

4.    Confidential Information – Admissions and Agreements.  Employee admits and agrees that such Confidential Information is a valuable, special, and unique asset of TQL's business that gives TQL advantage over its actual and potential competitors, and the Employee further admits and agrees that:

(a)    TQL has implemented such practices and measures as are reasonably necessary to preserve and to protect the confidentiality of such Confidential Information;

(b)    The Employee has access to such Confidential Information;

(c)    The Employee has been instructed about, and knows and understands the value and importance of such Confidential Information;

(d)    The Employee, by reason of the trust relationship arising between TQL and Employee, owes TQL a fiduciary duty to preserve and protect such Confidential Information from all unauthorized disclosure or unauthorized use;

(e)    Such Confidential Information constitutes "trade secrets";

(f)    Unauthorized disclosure or unauthorized use of such Confidential Information would irreparably injure TQL;

(g)    The Employee agrees to immediately assemble, produce, and return all of TQL's Confidential Information in the Employee's possession at any time during the course of Employee's employment with TQL upon the request or demand of TQL; and

(h)    The Employee agrees to return all of TQL's Confidential Information and to delete TQL's Confidential Information from any personal computer (or other electronic device) of Employee upon the termination of Employee's employment with TQL.  The Employee further consents to permit TQL to inspect and delete all of TQL's Confidential Information from the Employee's personal computers, laptops, cell phones, and other equipment including any personal computer maintained by the Employee at Employee's home or elsewhere.  Upon TQL's request, the Employee agrees to execute a written statement under oath swearing that all of TQL's Confidential Information that the Employee previously maintained upon Employee's personal computer (or other electronic device), if any, has been deleted.  The Employee further agrees that TQL shall have no obligation to pay any further compensation or remuneration to the Employee unless and until such time as the Employee provides Employee's written statement under oath as contemplated by this Section.

5.    Confidential Information – Prohibited Acts.  Employee understands and agrees that all Confidential Information is to be preserved and protected, is not to be disclosed or made available, directly or indirectly, to third persons for purposes unrelated to the business objectives of TQL without prior written authorization of an executive officer of TQL, and is not to be used, directly or indirectly, for purposes unrelated to the business objectives of TQL without prior written authorization of an executive officer of TQL; specifically, and without modifying or limiting the Agreement, Employee understands and agrees that, except in the ordinary course of conducting business for TQL, no Confidential Information, nor any part of it, either in original form or in duplicating or copied form, is to be (i) removed at any time from the premises of TQL,

FL                          4

or (ii) disclosed or made available, verbally, by electronic transmission, or by any other form or manner of communication, to any person, firm, corporation, association, or any other legal entity for any reason or purposes whatsoever, without prior written authorization of an executive officer of TQL.

Employee agrees that, during the time limits of the covenants identified in Section 9, Employee's engaging in any form of employment relationship with a Competing Business, as defined herein will be presumed to necessarily result in Employee revealing, basing judgments and decisions upon, or otherwise using TQL's Confidential Information to unfairly compete with TQL.

For purposes of this Agreement, the term: (i) "Customer" is any individual, business, or other entity, for whom TQL has rendered any service, or with respect to which TQL has planned and/or made contact for the purpose of rendering any service, within the twenty-four (24) months immediately preceding the termination or cessation of Employee's employment; (ii) "Motor Carrier" is any over-the-road shipper, carrier, trucker, or hauling business or otherwise defined in 49 USC §13102(3) that has transported freight for any TQL Customer as a result of a relationship, dealings, arrangements, or communications with TQL, or with respect to which TQL has planned and/or made contact for this purpose, within the twenty-four (24) months immediately preceding the termination or cessation of Employee's employment; (iii) "Competing Business" is any person, firm, corporation, or entity that is engaged in third-party logistics, freight brokerage, truck brokerage, or supply-chain management services anywhere in the Continental United States; and (iv) "solicit" includes, but is not limited to, any efforts in any form, intended to take business away from, intercept, or interfere with the business of TQL, including relationships with TQL and its employees, Customers, Motor Carriers, clients, consultants, suppliers, vendors, lessees, lessors, and employees, and specifically including doing business with any Customer or Motor Carrier.

Pursuant to the Defense of Trade Secrets Act, 18 U.S.C. § 1833(b), an individual shall not be held criminally or civilly liable under any Federal or State trade secret law for the disclosure of a trade secret that is made (1) in confidence to a Federal, State, or local government official, either directly or indirectly, or to an attorney; and solely for the purpose of reporting or investigating a suspected violation of law; or (2) in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal. An individual who files a lawsuit for retaliation by an employer for reporting a suspected violation of law may disclose the trade secret to the attorney of the individual and use the trade secret information in the court proceeding, if the individual files any document containing the trade secret under seal and does not disclose the trade secret, except pursuant to the court order.

6.    Confidential Information – Continuing Obligations.  Employee understands and agrees that Employee's obligations under this Agreement, specifically including the obligations to preserve and protect and not to disclose (or make available) to third parties consistent with applicable law, continue indefinitely and do not, under any circumstances or for any reason, whether voluntarily or involuntarily, specifically including wrongful discharge, cease upon termination of employment; and that, in the event of termination of the Employee's employment for any reason, specifically including wrongful discharge, such Confidential Information shall remain the sole property of TQL and shall be left in its entirety in the undisputed possession and control of TQL after such termination.  Employee agrees to inform all prospective or future employers of the Employee's obligations under the provisions of this Agreement.

7.    Confidential Information – Proprietary Interest.  Employee understands and agrees that all such Confidential Information is and shall remain, at all times, the sole property of TQL; that Employee obtains no proprietary interest in any Confidential Information developed or acquired in the course of Employee's employment with TQL; and that it shall be no defense to an action brought to enforce the confidentiality provisions of this Agreement that the Employee developed or acquired, in whole or in part, the Confidential Information disclosed or used without authorization.

8.    Confidential Information – Protected Whether Information of Parent or Subsidiaries. Employee recognizes, acknowledges, and agrees that this Agreement is specifically and expressly intended to protect, and does specifically and expressly protect all Confidential Information of TQL, whether in the possession, custody, or control of TQL, its employees, officers, agents, or any other affiliated, parent, or subsidiary company.

9.    Restrictive Covenant.  During employment with TQL, and for a period of one (1) year immediately following termination of Employee' employment, whether voluntarily or involuntarily, by wrongful discharge or for any other reason whatsoever, Employee shall not (directly or indirectly, either as an individual on Employee's own account or as a partner, joint venture, employee, agent, salesman, contractor, officer, director, stockholder, or otherwise on another's account) contact, solicit or accept business from, render any services to, give assistance to, or accept any compensation from any Customer or customer prospect of TQL.  A customer prospect is any business, company, individual, partnership, or entity, including former Customers, with which TQL or any of its employees, including but not limited to the Employee, had contact for the purpose of soliciting business, developing a business relationship, or discussing existing or potential services of TQL within the twelve (12) months immediately preceding the Employee's termination or cessation of employment.

Further, Employee hereby agrees that Employee shall not, directly or indirectly, enter into, participate in, consult with, or engage in, any business in competition with the business of TQL, or with any Competing Business, as it now exists or may exist in the future, either as an individual or on Employee's own account, or as a partner, joint venture, employee, agent, salesman, contractor, officer, director, stockholder, or otherwise of another, for a period of one (1) year after the date of the termination of Employee's employment with TQL.

This Agreement on the part of Employee, is given and made by Employee to induce TQL to employ or continue to employ the Employee for a position of trust and confidence and to enter into this Agreement with Employee, and Employee hereby acknowledges the sufficiency of the consideration of this Restrictive Covenant.

It is further understood and agreed that the running of the one (1) year set forth in this Section shall be tolled during any time period during which Employee violates any provision of this Agreement.

This Restrictive Covenant shall be construed as an agreement independent of any other provision in this Agreement, and the existence of any claim or cause of action of Employee against TQL, whether predicated upon this Agreement or otherwise, shall not constitute a defense to the enforcement by TQL of this Restrictive Covenant.

The refusal or failure of TQL to enforce this Restrictive Covenant against any other employee or ex-employee, for any reason, shall not constitute a defense to the enforcement by TQL of this Restrictive Covenant, nor shall it give rise to any claim or cause of action by such employee or ex-employee against TQL.

If any portion of this Restrictive Covenant is held by a Court of competent jurisdiction to be unreasonable, arbitrary, against public policy for any reason, or invalid for any reason, the Restrictive Covenant shall be considered divisible, as to time, geographical area, and restrictive scope; each month of the specified period shall be deemed a separate period, each square mile within the restricted territory shall be deemed a separate geographical area, and each Customer and customer prospect shall be deemed a separate area of restriction so that the lesser period or area of restriction shall remain effective so long as such lesser restriction is not unreasonable, arbitrary, or against public policy for any reason. TQL and Employee agree that, if a Court of competent jurisdiction should determine the specified period or scope of the restriction to be unreasonable, arbitrary, or against public policy for any reason, a lesser period or restrictive scope that is determined to be reasonable, non-arbitrary, and not against public policy for any reason, may be enforced by TQL against Employee.

10.    Confidential Information – Remedies.  If an action should have to be brought by TQL against Employee to enforce the provisions of this Agreement, Employee recognizes, acknowledges, and agrees that TQL is entitled to all civil remedies including without limitation:

(a)    Preliminary and permanent injunctive relief restraining Employee from any unauthorized disclosure or use of any Confidential Information, in whole or in part, and from rendering any service to any person, firm, corporation, association, or other legal entity to whom or to which such Confidential Information, in whole or in part, has been disclosed or is threatened to be disclosed; and

(b)    Actual damages, attorneys' fees in the trial and appellate courts, and costs and expenses of investigation and litigation, including expert witness fees and other costs and expenses; and all other remedies available under law.

Nothing in this Agreement shall be construed as prohibiting TQL from pursuing any other legal or equitable remedies available for breach or threatened breach of the provisions of this Agreement, and the existence of any claim or cause of action of Employee against TQL, whether predicated on this Agreement or otherwise, shall not constitute a defense to the enforcement by TQL of any of the provisions of this Agreement.

11.    Restrictive Covenant – Remedies.  TQL and Employee agree that, in the event of a breach by Employee of the Restrictive Covenant set forth above, such a breach would irreparably injure TQL and would leave TQL with no adequate remedy at law, and TQL and Employee further agree that, if an action should have to be brought by TQL against Employee to enforce the Restrictive Covenant, TQL shall be entitled to all available civil remedies under Ohio and/or Florida statutes and case law.  The remedies available to Employer against Employee shall further include, without limitation:

(a)    Preliminary and permanent injunctive relief restraining Employee from violating, directly or indirectly, either as an individual, on Employee's own account, or as a partner, joint

FL                                              7

venture, employee, agent, salesman, contractor, officer, director, stockholder, or otherwise on another's account, the competitive restriction of Section 9 above; and

(b) Actual damages, attorneys' fees in the trial and appellate courts, costs and expenses of investigation and litigation, including expert witness fees and other costs and expenses, and all other remedies available under law.

Nothing in this Agreement shall be construed as prohibiting TQL from pursing any other legal or equitable remedies available to it for breach or threatened breach of the Restrictive Covenant, and the existence of any claim or cause of action of Employee against TQL, whether predicated on this Agreement or otherwise, shall not constitute a defense to the enforcement by TQL of the Restrictive Covenant.

Should an action have to be brought by TQL against Employee to enforce the Restrictive Covenant, the period of restriction shall be deemed to begin running on the date of entry of an Order granting TQL preliminary injunctive relief, and shall continue uninterrupted for the next succeeding one (1) year; Employee acknowledges and agrees that the intent and purpose of the Restrictive Covenant is to preclude Employee from competing with TQL for a full one (1) year period, and that such purpose and effect would be frustrated by measuring the period of restriction from the date of termination of employment where Employee failed to honor the Restrictive Covenant, until directed to do so by Court Order.

12.    Property Rights and Assignment. Employee agrees that any work, invention, product design, or technological innovation created, conceived, developed, produced, generated, and/or improved by Employee, whether or not patentable, or subject to copyright, trademark, or trade secret protection, at any time during or arising out of Employee's employment with TQL that results from, is suggested by, or relates to any work which Employee does for TQL, shall be the absolute property of TQL and shall promptly be disclosed by Employee to TQL. Employee hereby assigns any and all right, title, and interest in any work product to TQL, including assigning any and all rights to any future invention arising out of or relating to Employee's employment with TQL. To the extent necessary, during employment and thereafter, Employee shall sign applications, assignments, and any other papers that TQL may consider necessary or helpful in perfecting and enforcing TQL's rights in, and to, any such work, invention, improvement, product design, and/or technological innovation.

13.    Consideration. Employee expressly acknowledges and agrees that the execution by TQL of this Agreement and the obligations of TQL under this Agreement constitute full, adequate, and sufficient consideration to Employee from TQL for the duties, obligations, and covenants of Employee under this Agreement, including, by way of illustration and not by way of limitation, the agreements, covenants, and obligations of Employee under Sections 4, 5, 6, 7, 8, 9, and 12 of this Agreement. TQL expressly acknowledges and agrees similarly with respect to the consideration received by it from Employee under this Agreement.

14.    Personnel Policies. Employee agrees to abide by TQL's rules, regulations, policies, and practices, written and to the extent that Employee has actual knowledge thereof, unwritten, as they may from time to time be adopted or modified by TQL at its sole discretion. TQL's written rules, policies, practices, and procedures shall be binding on Employee unless superseded by or in conflict with this Agreement, in which case this Agreement shall govern. However, such rules, policies, practices, and procedures are not part of this Agreement and whether written,

FL                                                        8

oral, or implied, shall not create any contract between Employee and TQL at any time. Additional contractual obligations or other modifications of this Agreement may be made only by an express written agreement between Employee and TQL.

15.    Notices.  Any and all notices that shall be given pursuant to this Agreement shall be in writing, shall be either actually delivered or sent by United States mail, return receipt requested, and shall be addressed to the parties at the addresses of the parties identified in this Agreement.

16.    Consent to Jurisdiction and Venue – Waiver of Jury Trial.  Any action, suit, or proceeding with respect to or arising out of this Agreement shall be brought in the Court of Common Pleas, Clermont County, Ohio, the United States District Court for the Southern District of Ohio, or the United States District Court located in the jurisdiction where the office of Employee's employment is located.  Employee hereby consents to the personal jurisdiction of the state and/or federal courts identified in this Section, consents to service of process therefrom, and waives any other requirements with respect to personal jurisdiction, venue, or service of process. Employee hereby agrees that any controversy which may arise under this Agreement or the relationship established by this Agreement would involve complicated and difficult factual and legal issues and that, therefore, any action brought by TQL against Employee or brought by Employee, alone or in combination with others, against TQL, arising out of this Agreement, shall be determined by a judge sitting without a jury.

17.    Acknowledgment.  Employee hereby acknowledges that Employee has been provided with a copy of this Agreement for review prior to signing it, that Employee has been given the opportunity to have this Agreement reviewed by Employee's own attorney prior to signing it, that Employee understands the purposes and effects of this Agreement, and that Employee has been given a signed copy of this Agreement for Employee's own records.

18.    Waiver of Breach.  The waiver by TQL of a breach or threatened breach of any provision of this Agreement by Employee shall not be construed as a waiver of any subsequent breach of Employee.

19.    Assignability.  This Agreement shall be binding upon and inure to the benefit of Employer, its successors, and assigns, and shall be binding upon and inure to the benefit of Employee, his/her personal representatives, estate, heirs, and designated beneficiaries.

20.    Rules of Construction.

       (a)    Entire Agreement.  This Agreement constitutes the entire agreement between TQL and Employee pertaining to the subject matters hereof, and it supersedes all negotiations, preliminary agreements, and all prior and contemporaneous discussions and understandings of the parties in connection with the subject matters hereof.  Except as otherwise provided, no covenant, representation, or condition not expressed in either this Agreement or an amendment hereto made and executed in accordance with the provisions of Subparagraph (b) of this Section shall be binding upon the parties hereto or shall affect or be effective to interpret, change, restrict or terminate the provisions of this Agreement.

       (b)    Amendments.  No change, modification, or termination of any of the terms, provisions, or conditions of this Agreement shall be effective unless made in writing and signed or initialed by all parties to this Agreement.

FL                                          9

(c)     <u>Governing Law</u>.  This Agreement shall be governed and construed in accordance with the statutory and decisional law of the State of Ohio first, and Florida law if necessary.

(d)     <u>Severability</u>.  If any section, subparagraph, or provision of this Agreement, or the application of such section, subparagraph, or provision is held invalid, the remainder of the Agreement, and the application of such section, subparagraph, or provision to persons or circumstances other than those with respect to which it is held invalid, shall not be affected thereby.

(e)     <u>Headings and Captions</u>.  The titles and captions of section and subparagraphs contained in this Agreement are provided for convenience or reference only, and they shall not be considered a part of this Agreement; such titles or captions are not intended to define, limit, extend, explain, or describe the scope or extent of this Agreement or any of its terms, provisions, representations, warranties, or conditions, in any manner or in any way whatsoever.

(f)     <u>Gender and Number</u>.  All pronouns shall be deemed to refer to the masculine or feminine, and to the singular or plural, as the identity of the person or persons may require.

(g)     <u>Continuance of Agreement</u>.  The rights, responsibilities, and duties of TQL and Employee, and the covenants and agreements contained in this Agreement shall survive the execution of this Agreement, shall continue to bind the parties to this Agreement, shall continue in full force and effect until each and every obligation of the parties pursuant to this Agreement shall have been performed, and shall be binding upon the successors and assigns of the parties.

**IN WITNESS WHEREOF**, the parties have executed this Agreement the day and year written below.

TQL WITNESSES:                          TOTAL QUALITY LOGISTICS, LLC

_____       By:_____

_____       Print:____ Jeffrey M Montelisciani

                                        Title: ____ Sr Vice President of Sales

                                        Date: ____ 12/3/2018

EMPLOYEE WITNESSES:                     EMPLOYEE

_____       _____
                                        Signature

_____       Print: _JOSHUA  JAMES_

                                        Date: _3 DEC 18_

# Exhibit B



## TOTAL QUALITY LOGISTICS, LLC

### Employee Non-Compete, Confidentiality and Non-Solicitation Agreement

### (Alabama)

This Employee Non-Compete, Confidentiality and Non-Solicitation Agreement ("Agreement") is entered into by and between Total Quality Logistics, LLC ("TQL"), 4289 Ivy Pointe Blvd., Cincinnati, Ohio 45245, and the Employee whose name is set forth below his or her signature on the last page of this Agreement and whose address is on file with TQL ("Employee"). Performance under this Agreement will begin on the date Employee's employment with TQL actively begins.

### RECITALS:

**WHEREAS**, TQL is an Ohio limited liability company providing shipping services, third-party logistics services, freight brokerage services, truck brokerage services, and supply-chain management services throughout the Continental United States. References to TQL in this Agreement refer to TQL, its parent and subsidiary companies, all related entities, and its successors and assigns;

**WHEREAS**, TQL is unique within the organizations providing shipping services, third-party logistics services, freight brokerage services, truck brokerage services, and supply-chain management services (the "Industry"). TQL has spent extensive time developing its goodwill and its relationships with Customers, Motor Carriers, suppliers, and others within the Industry. TQL provides extensive training on ways to succeed within the Industry. TQL also provides tools, such as proprietary software, that are unique within the Industry. The relationships, tools, and training developed by TQL will assist Employee in gaining intimate knowledge of TQL's business model, its Customers, Motor Carriers, suppliers, contact information, lanes, pricing, sales strategy, service, and other confidential and proprietary information. The knowledge learned at TQL is unlike what could be learned elsewhere within the Industry. TQL takes steps to protect the confidentiality of this information and it would have value to a TQL competitor. Employee, therefore, acknowledges and agrees that what Employee learns and is trained in at TQL would necessarily cause unfair competition if Employee took employment competitive to TQL;

**WHEREAS**, TQL develops and maintains confidential proprietary information (hereinafter referred to as, "Confidential Information"), including but not limited to, its operating policies and procedures; computer databases; computer software; methods of computer software development and utilization; computer source codes; financial records, including but not limited to, credit history and information about Customers and potential Customers, Motor Carriers, and suppliers; information about transactions, pricing, the manner and mode of doing business, and the terms of business dealings and relationships with Customers and Motor Carriers; financial and operating controls and procedures; contracts and agreements of all kinds, including those with Customers, Motor Carriers, and vendors; pricing, marketing, and sales lists and strategies; Customer lists and Motor Carrier lists including contact names, physical and email addresses, telephone numbers, and other information about them; trade secrets; correspondence; accounts; business policies; purchasing information; functions and records; logistics management; and data, processes, and procedures. Confidential Information also includes any

AL                                                            1



information described above which TQL obtains from another company and which TQL treats as proprietary or designates as Confidential Information, whether or not owned or developed by TQL. This information may be in tangible written form, computer databases, or it may be represented and communicated solely by oral expressions or business activities which are not reduced to written form. Confidential Information may be protected by patents, copyrights, or other means of protection. Confidential Information does not include information that is protected by the National Labor Relations Act ("NLRA"), and nothing in this Agreement shall be interpreted to prohibit employees from engaging in protected activity under the NLRA, including without limitation discussing wages, hours, or terms and conditions of employment. TQL will not prohibit or discipline any of its employees from or for discussing their wages, hours, or other terms and conditions of employment or engaging in any other activity protected by the NLRA;

**WHEREAS,** Employee agrees that any and all such Confidential Information set forth above, whether or not formally designated as such, is vital to the success of TQL's business and Employee understands that all such Confidential Information is the exclusive property of TQL, that it is to be treated and maintained as confidential proprietary information by Employee, and that it is treated and maintained as confidential proprietary information by TQL;

**WHEREAS,** in order to allow TQL to remain effective and competitive in the marketplace in which it conducts its business, and to maintain its business relationships on the basis of trust and confidence, it is essential that all Confidential Information remain protected from unauthorized disclosure, dissemination, and use, except as authorized and required by TQL to enable Employee to properly perform his or her work in the normal course of TQL's business;

**WHEREAS,** Employee acknowledges that unauthorized use or disclosure of Confidential Information as defined herein would cause, or be likely to cause, substantial and irreparable harm and detriment to TQL and would constitute unreasonable and unfair competition to TQL;

**WHEREAS,** Employee acknowledges that TQL's Customer and Motor Carrier lists, other information about TQL's Customers and Motor Carriers, its Load Management System, and other Confidential Information, are proprietary trade secrets with significant economic value, are compiled through a substantial investment of time and money by TQL, and are not common knowledge throughout the Industry;

**WHEREAS,** in the course and scope of employment by TQL, Employee must be given access to such Confidential Information from time-to-time or continuously, in order to effectively perform his or her job duties; and

**WHEREAS,** Employee desires to be employed by TQL and TQL will not agree to employ or continue to employ Employee, unless Employee signs this Agreement and agrees to be bound by it.

**NOW THEREFORE,** in consideration of the employment or continued employment of Employee by TQL, including compensation and benefits provided by TQL, and the terms, conditions, and covenants, set forth herein, which Employee considers adequate consideration for the promises contained herein, TQL and Employee agree as follows:

1.  Recitals. The "Recitals" set forth above are hereby restated and incorporated herein by reference as though fully set forth again.

AL                                         2



2.    Employee Duties.  Employee shall undertake and assume the responsibility of performing for and on behalf of TQL whatever duties shall be assigned to Employee by TQL at any time and from time-to-time.  It is further understood that TQL retains the right to modify Employee's duties at any time and, in its discretion, determine Employee's compensation, including but not limited to, any salary, other cash compensation, and benefits.

3.    At-will Employment.  Employee is an employee at-will.  Nothing in this Agreement changes Employee's status as an at-will employee.  Either TQL or Employee may terminate Employee's employment for any reason at any time.

4.    TQL Owns Confidential Information.  All Confidential Information as described herein is proprietary and the sole property of TQL.

5.    Confidential Information Is for TQL's Use Only.  Unless Employee has prior written consent from TQL, Employee shall not at any time during the course of his or her employment by TQL, and at all times thereafter, use for any purpose or publish, copy, disclose, or communicate to any individual, firm, corporation, or other business entity other than TQL, any Confidential Information, except as properly necessary and authorized by TQL in the conduct of TQL's business or as required by law.  Employee agrees that all information disclosed to Employee or to which Employee has access during the period of his or her employment shall be presumed to be Confidential Information hereunder if there is any reasonable basis to believe it to be Confidential Information or if TQL appears to treat it as confidential.

6.    Return of Company Property.  Upon termination of employment or upon request by TQL for any reason, Employee will immediately deliver to TQL all originals and all copies of all documents and other materials obtained from or belonging to TQL, including but not limited to all Confidential Information, regardless of form, in Employee's possession, custody, or control, including but not limited to any TQL files, documents (including any containing customer information), computer data, or other media however stored, and Employee will retain no copy of any such document, data, or other materials.

7.    Presumption Regarding Confidential Information.  Employee agrees that Employee's engaging in any form of employment relationship with a Competing Business, as defined in Section 9 below, would necessarily result in Employee revealing, basing judgments and decisions upon, or otherwise using TQL's Confidential Information to unfairly compete with TQL.

8.    Property Rights and Assignment.  Employee agrees that any work, invention, product design, or technological innovation created, conceived, developed, produced, generated, and/or improved by Employee, whether or not patentable, or subject to copyright, trademark, or trade secret protection, at any time during or arising out of Employee's employment with TQL that results from, is suggested by, or relates to any work which Employee does for TQL, shall be the absolute property of TQL and shall promptly be disclosed by Employee to TQL.  Employee hereby assigns any and all right, title, and interest in any work product to TQL, including assigning any and all rights to any future invention arising out of or relating to Employee's employment with TQL.  To the extent necessary, during employment and thereafter, Employee shall sign applications, assignments, and any other papers that TQL may consider necessary or helpful in perfecting and enforcing TQL's rights in, and to, any such invention, improvement, and/or technological innovation.

AL                                                    3

9.  <u>Covenants and Remedies</u>.

(a)  <u>Agreement to Covenants and Material Breach</u>.  The Employee hereby covenants and agrees to the terms and conditions of the restrictive covenants and agreements set forth in Sections 4 through 9 of this Agreement, and agrees that any breach thereof shall constitute a material breach by the Employee of his or her obligations under this Agreement.

(b)  <u>Covenants</u>.  Employee agrees that, during the course of his or her employment (except as required in the course of Employee's employment with TQL), and for a period of one (1) year after termination or cessation of Employee's employment for any reason:

(i)  Employee will not, directly or indirectly, own, operate, maintain, consult with, be employed by (including self-employment), engage in, or have any other interest (whether as an owner, shareholder, officer, director, partner, member, employee, joint venture, beneficiary, independent contractor, agent, or any other interest) in any Competing Business (as defined below), except the ownership of less than 1% of the outstanding equity securities of any publicly-held corporation or entity;

(ii)  Employee will not directly or indirectly, either as an employee, agent, consultant, contractor, officer, owner, or in any other capacity or manner whatsoever, whether or not for compensation, participate in any transportation-intermediary business that provides the same or similar services to Company's Customers or identified prospective Customers, including but not limited to any person or organization that provides shipping, third-party logistics, freight brokerage, truck brokerage, or supply-chain management services;

(iii)  Employee will not, directly or indirectly, solicit any Customer, Motor Carrier, client, consultant, supplier, vendor, lessee, or lessor, or take any action, to divert business from TQL;

(iv)  Employee will not, directly or indirectly, interfere with, tamper with, disrupt, use, or attempt to disrupt any contractual or other relationship, or prospective relationship, between TQL and any Customer, Motor Carrier, client, consultant, supplier, vendor, lessee, or lessor of TQL; and

(v)  Employee will not, directly or indirectly employ, recruit, solicit, or assist others in employing, recruiting, or soliciting any person who is, or within the previous twelve (12) months has been, an employee of, consultant with, or been party to another business relationship with TQL.

(vi)  It is further understood and agreed that the running of the one (1) year set forth in this Paragraph shall be tolled during any time period during which Employee violates any provision of this Agreement.

(c)  <u>Trade Secrets</u>.  The Employee recognizes and acknowledges that TQL's trade secrets, Customer lists, Motor Carrier lists, Load Management System, private processes, and other Confidential Information as they may exist from time to time are valuable, special, and unique assets of TQL's business, access to and knowledge of which are essential to performance of Employee's duties hereunder.  Employee will not hereafter disclose such trade

AL                                                        4

secrets, Customer lists, Motor Carrier lists, Load Management System, private processes, and other Confidential Information to any person, firm, corporation, association, or other entity for any reason or purpose whatsoever, except as required by law, nor shall Employee make use of any such property for Employee's own purpose or the benefit of any person, firm, corporation, association, or any entity other than TQL under any circumstance.

(d)     <u>Reasonableness of Restrictions</u>.    Employee recognizes that the foregoing geographic, duration, and content restrictions are reasonable and properly required for the adequate protection of the business of TQL from the disclosure of Confidential Information and unfair competition.

(e)     <u>Injunction</u>.  If there is a breach or threatened breach of any part of this Agreement, TQL shall be entitled to an injunction restraining Employee from such breach or threatened breach.   Alternatively and additionally, TQL, in its sole discretion, may pursue a claim for damages in tort and/or contract resulting from any breach or threatened breach of this Agreement by Employee.  If Employee is found by a court of competent jurisdiction to have violated the terms of this Agreement, Employee shall be liable for costs, expenses, and reasonable attorneys' fees incurred by TQL.

(f)     For purposes of this Agreement, the term: (i) "Customer" is any individual, business, or other entity, for whom TQL has rendered any service, or with respect to which TQL has planned and/or made contact for the purpose of rendering any service, within the twenty-four (24) months immediately preceding the termination or cessation of Employee's employment; (ii) "Motor Carrier" is any over-the-road shipper, carrier, trucker, or hauling business that has transported freight for any TQL Customer as a result of a relationship, dealings, arrangements, or communications with TQL, or with respect to which TQL has planned and/or made contact for this purpose, within the twenty-four (24) months immediately preceding the termination or cessation of Employee's employment; (iii) "Competing Business" is any person, firm, corporation, or entity that is engaged in shipping, third-party logistics, freight brokerage, truck brokerage, or supply-chain management services anywhere in the Continental United States; and (iv) "solicit" includes, but is not limited to, any efforts in any form intended to take business away from, intercept, or interfere with the business of TQL, including relationships with TQL and its employees, Customers, Motor Carriers, clients, consultants, suppliers, vendors, lessees, lessors, and employees, and specifically, including doing business with any Customer or Motor Carrier.

(g)     Pursuant to the Defense of Trade Secrets Act, 18 U.S.C. § 1833(b), an individual shall not be held criminally or civilly liable under any Federal or State trade secret law for the disclosure of a trade secret that is made (1) in confidence to a Federal, State, or local government official, either directly or indirectly, or to an attorney; and solely for the purpose of reporting or investigating a suspected violation of law; or (2) in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal.  An individual who files a lawsuit for retaliation by an employer for reporting a suspected violation of law may disclose the trade secret to the attorney of the individual and use the trade secret information in the court proceeding, if the individual files any document containing the trade secret under seal and does not disclose the trade secret, except pursuant to the court order.

10.     <u>Governing Law, Jurisdiction, and Venue</u>.  This Agreement shall be interpreted and enforced under the laws of the State of Ohio, without giving effect to conflict of law provisions

AL                                               5

which would result in the application of any law other than Ohio law. Any action, suit, or proceeding with respect to or arising out of this Agreement shall be brought in either the Court of Common Pleas, Clermont County, Ohio or the United States District Court for the Southern District of Ohio. Further, Employee hereby submits to the personal jurisdiction of the state and/or federal courts of Ohio, consents to service of process therefrom, and waives any other requirements with respect to personal jurisdiction, venue, or service of process.

11.     Severability. Should any of the provisions of this Agreement be declared or determined to be illegal or invalid, (a) the validity of the remaining parts, terms, or provisions shall not be affected thereby and said illegal or invalid part, term, or provision shall be deemed not a part of this Agreement; (b) the remaining provisions of this Agreement shall remain in full force and effect and shall not be affected by such illegal, invalid, or unenforceable provision or by its severance from this Agreement; and (c) there shall be added automatically as a part of this Agreement a provision as similar in terms to such illegal, invalid, or unenforceable provision as may be possible and still be legal, valid, and enforceable.

12.     Personnel Policies. Employee agrees to abide by TQL's rules, regulations, policies, and practices, written and to the extent that Employee has actual knowledge thereof, unwritten, as they may from time to time be adopted or modified by TQL at its sole discretion. TQL's written rules, policies, practices, and procedures shall be binding on Employee unless superseded by or in conflict with this Agreement, in which case this Agreement shall govern. However, such rules, policies, practices, and procedures are not part of this Agreement and whether written, oral or implied, shall not create any contract between Employee and TQL at any time. Additional contractual obligations or other modifications of this Agreement may be made only by an express written agreement between Employee and TQL.

13.     No Conflicting Employee Agreement. Employee represents that Employee is not bound by any agreement or contract or other duty to a former employer or any other party which would prevent Employee from complying with any obligations hereunder or performing his or her duties as an employee of TQL.

14.     Acknowledgments. Employee acknowledges and agrees that he or she:

      (a) has had sufficient time within which to consider this Agreement before executing it;
      (b) has carefully read and fully understands all of the provisions of this Agreement;
      (c) knowingly and voluntarily agrees to all of the terms set forth in this Agreement;
      (d) knowingly and voluntarily intends to be legally bound by this Agreement;
      (e) has had sufficient opportunity to obtain and consult with his or her own lawyer regarding this Agreement; and
      (f) has knowingly and voluntarily executed this Agreement.

15.     Binding Agreement. This Agreement shall be binding and enforceable upon the parties hereto, their heirs, representatives, successors, and assigns. This Agreement is not assignable by Employee, but is fully assignable by TQL without notice or consent from the Employee.

16.     Entire Agreement. This Agreement sets forth the entire agreement between the parties hereto pertaining to the subject of this Agreement, and fully supersedes in all respects any and all prior oral or written agreements or understandings between the parties hereto pertaining to the subject of this Agreement, including, but not limited to, the prior non-compete. This

AL                                                          6

Agreement may be amended or modified only upon a written agreement signed by both of the parties hereto. This Agreement may be executed in counterparts, each of which shall be deemed an original and all of which taken together shall constitute one Agreement.

**IN WITNESS WHEREOF,** the undersigned parties to this Agreement have duly executed it on the day and year first written below.

**EMPLOYEE:**

_____
Signature

Name: BRANDY KENNAMORE
Please Print

Date: 10/09/17

**TOTAL QUALITY LOGISTICS, LLC**

By: _____

Name: Jeffrey M Montelisciani

Title: Sr Vice President of Sales

Date: 10/9/2017

AL

# Exhibit C



# LAW FIRM
**Harvey Scholl, P.A.**

February 23, 2021

Walter Haverfield LLP
301 E. Ninth Street
Suite 3500
Cleveland, OH 44114

Attention: Benjamin D. Carnahan, Esq.

Re:    Case Number: 2020 CVH 00835
       Total Quality Logistics Inc vs Abound Logistics LLC et al

Dear Attorney Carnahan,

By way of this letter I am informing you that we will be taking over representation of Abound Logistics LLC pursuant to the above case.

Be advised that you may file a motion to withdraw. If you require the client's signature, please send it to me and I will get it handled for you.

Respectfully yours,

Harvey J. Scholl, Esq.

Cc:    Perino Orlando, Harvey Scholl, PA
       Abound Logistics, LLC